UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

KEITH BOX,                          )
                                    )
            Plaintiff,              )
                                    )
     vs.                            )          Case No. 1:05CV6 HEA
                                    )
CHUCK DWYER, et al.,,               )
                                    )
            Defendants.             )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on defendants Correctional Medical Services

(CMS), Stanley and Hakala's Motion for Summary Judgment, [# 13]. Plaintiff

opposes the Motion and the parties have submitted memoranda in support of their

respective positions. For the reasons set forth below, the Motion is granted.

## Introduction

Plaintiff, is an inmate at the Southeast Correctional Center, Charleston,

Missouri. Plaintiff filed the instant Section 1983 *pro se* Complaint on January 7,

2005.[1] The Complaint alleges that the defendants denied him medical treatment,

that this denial was deliberately indifferent, and that defendants' actions violated his

_____

[1] Plaintiff previously filed this action on September 16, 2004, Cause Number 1:04CV127
HEA. This action was dismissed without prejudice on December 15, 2004 for failure to exhaust
administrative remedies.

constitutional rights under the Eighth Amendment.  Plaintiff contends that he injured

himself while playing basketball in April, 2004.  According to plaintiff's allegations,

he waited a couple of days and his leg would not stop hurting, so he began putting in

Medical Forms.  The Complaint further sets forth allegations of events which have

occurred regarding plaintiff's medical condition.  Plaintiff has named Michael

Hakala, Phyllis Stanley, Greg Rodriguez, Correctional Medical Services, Inc. and

Superintendent Chuck Dwyer as defendants.

Defendants Hakala, Stanley and CMS now move for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### Facts and Background[2]

Plaintiff has been incarcerated at the Southeast Correctional Center since

September 11, 2003.  Defendant CMS contracts with the Missouri Department of

Corrections to provide independent contractor physicians and other non-physician

employee health care professionals to care for the health needs of those incarcerated

within the Department of Corrections.  Defendant Stanley is a registered nurse and

serves as the site Health Services Administrator.  Defendant Stanley has worked for

---

[2]  Plaintiff does not specifically controvert defendant's Statement of Uncontroverted Medical Facts, however plaintiff does dispute some of the facts set forth in defendant's submissions.  The Court will address  those disputes throughout and will discuss whether plaintiff has presented any evidence in support of his dispute.

CMS since October 29, 2001 and has held her current position since February 24, 2003. Stanley's position entails managing and overseeing the day to day operations of the medical unit located at Southeast Correctional Center. Defendant Hakala is a licenced physician, board certified in Family Practice. He works for CMS and has worked at Southeast Correctional Center since June 14, 2004 as an independent contractor providing inmate medical care.

Plaintiff submitted a Medical Services Request on May 28, 2004 for complaints of "groin pull, stomach pain and middle back pain."[3] A non-defendant nurse evaluated plaintiff that day and noted plaintiff's complaint that his right groin felt like a bone was sticking him and it went into his right buttock. This nurse noted that plaintiff also complained of urinating about 20 times per day and that his urine had a strong odor. The nurse noted that a urine dipstick was done and "wnl only abnormal was bilirubin 2+," i.e., it was essentially within normal limits. Upon examination, the nurse noted that there was no swelling noted to plaintiff's groin area. The nurse gave plaintiff Tylenol for pain as needed and told plaintiff to return

---

[3] Plaintiff disputes that this was his first request for medical attention and argues that the Medical Services Request Form has been altered. Plaintiff's assertions alone, however, are insufficient for this Court to find that the Department of Corrections form has been altered or changed by Department of Corrections personnel.

to the medical unit if there was no improvement.

Plaintiff submitted a Medical Services Request on May 30, 2004 for complaints of pain in his groin, stomach and middle back. He was evaluated by a non-defendant nurse on June 1, 2004. Plaintiff's complaints were noted and it was further noted that plaintiff stated that his problems had been present for over a month. No adverse physical findings were noted by the nurse. Plaintiff was advised to return to the medical unit, if needed.

On June 3, 2004, plaintiff was evaluated by a non-defendant nurse for complaints of stomach, back and groin pain. Plaintiff denied wanting any medication and was referred to a physician for evaluation of his ongoing complaints.

Defendant Rodriguez evaluated plaintiff on June 11, 2004 for complaints of a painful hard lump over his right pubic area. Rodriguez noted that plaintiff stated that he (plaintiff) was playing basketball, jumped and when he landed he felt a sharp pain over the right groin area and thought it was a pulled muscle. Rodriguez noted that plaintiff had a hard, irregular mass below the medial ligament. He suspected a callus of fracture of the pubic bone and ordered an x-ray to be taken of the pelvis, a follow up appointment and issued a lay-in for a bottom bunk for 3 weeks.

On June 30, 2004 plaintiff's pelvis was x-rayed. Dennis Luetkemeyer, M.D. interpreted the x-ray: "A single view of the pelvis was obtained. There is an old

fracture of the inferior pubic ramus on the right, which shows some exuberant callous formation and some heterotopic ossification. No acute fracture is seen." Dr. Luetkemeyer's impression was "exuberant callous formation and heterotopic ossification suspected at the right inferior pubic ramus fracture. No acute fracture is identified."

Plaintiff submitted a Medical Services Request on July 13, 2004[4] and was evaluated by a non-defendant nurse for his complaints of stomach pain and "urinate problems." The nurse noted that the urine dip stick done had a trace of blood. She also noted that plaintiff complained that his stomach hurt when he had a bowel movement. She issued Colace, a stool softener, to see if it helped. If not, the nurse noted that she would refer plaintiff to Dr. Sick Call.

Plaintiff submitted a Medical Services Request on July 15, 2004.[5]  Plaintiff complained of a "bone sticking out the side part of right leg and it's causing severe and constant pain in leg area." The non-defendant nurse noted plaintiff's complaints and referred plaintiff to a physician for further evaluation. The record indicates that

_____

[4] Defendants' Uncontested Statement of Medical Facts actually states that plaintiff submitted the request on "June 13, 2004." This appears to be a typographical error, since there is no request in the exhibits for June 13, but there is one for July 13, 2004.

[5] Once again, the Statement states that this request was made on June 125, 2004. The exhibits establish that the request was actually made on July 15, 2004.

plaintiff submitted to a follow up appointment on July 15, 2004,[6] wherein the notes

establish that plaintiff could flex his lumbar spine to touch his toes. His lateral

flexion was to knee bilaterally and slower on the right. His hips were level and his

legs appeared of equal length. It was also noted that plaintiff had right hip pain with

Fabere. He also complained of Hematemsis once a week which entailed no pain.

Plaintiff denied any melena. The notes reveal that an x-ray was desired by the

examiner of plaintiff's right hip and pelvis. The notes also indicate that the

examiner was going to order a CBC and H Pylori Antibody Test on plaintiff. The

notes also state "the RE is the possibility he has injury to the acetabulum on the

right as well but not all motion of hip would indicate that. Most of his complaints I

believe could be due to soft tissue injury and distortion from the fracture he had in

the past. Need add'l info-specific adl effects, treatment and Rx that have been tried

and failed" I.E. back exercises taught? Add'l info noted- -thanks will continue

review. Add'l Comments noted-=- will defer to RMD  LPH Criteria not met per

RMD 'Not sure why a surgical consult is needed. Conservative treatment w/ work

restrictions.'"

  Defendant Hakala evaluated plaintiff on July 21, 2004 for a follow up visit on

---

[6] There is no indication from the July 15, 2004 follow up visit the person conducting the examination and the author of the notes, therefore, the Court will reiterate the notes herein without naming the examiner.

a fracture of the right pubic ramus (inferior). Hakala noted that plaintiff reported his basketball injury and that the x-ray was reviewed and reported exuberant callous on remote fracture of the right inferior pubic ramus. Hakala noted that plaintiff walked with a decreased swing in his right leg, but that he was noted to climb on and off the examination table easily. Hakala noted that plaintiff's lungs were clear and his heart was regular. A Fabere test was performed bilaterally and Hakala noted that plaintiff had a slight decrease in abduction, external rotation and flexion on the right hip. The "seated SLR [was] negative bilaterally. There [was] anexostsis callous in right pubis ramus." Hakala noted that he was going to request an Ortho Consult. Hakala ordered Amoxicillin, and a Urinalysis.

The Orthopedics Referral stated that the reason for the referral by Hakala was "remote Fx R. Inferior Pubic Ramus formed exuberant callous and has slight limitation to gait. [Plaintiff] complains of pain." The referral was not approved and the referral comments provided that additional information was needed: "Specific ADL effects, treatment and Rx that have been tried and failed. I.E. back exercises taught?"

The Urinary dipstick performed on July 26, 2004, noted that the following results: Utobilinogen-normal; glucose-negative; Ketone-negative; bilirubin-negative; protein-negative; color and clarity-clear and dark yellow; nitrate-negative;

leukocytes-trace; blood-negative; ph-6; specific gravity-1.015.

Plaintiff was seen by Hakala on July 29, 2004 for complaints of pain in his right hip when walking or trying to play basketball. Plaintiff also reported pain in his right hip if he would lie on his right side. Hakala noted that plaintiff walked to chow and some days were better than others. Plaintiff denied having any melena, but stated that when he strains at stool, he would spit up bright red blood once per week. Plaintiff also stated that his stool was regular and that he was eating well. Hakala observed that plaintiff walked with a slight prolongation of his right leg swing and that he started with a "hitch" in his right hip when rising from sitting. Hakala also noted that SLR testing was negative left and right but both would cause a pain or pull in plaintiff's "R Prox Thigh or Gluteus." It was noted that SLR testing was done reclining and sitting with the same result. Fabere testing or Internal/external rotation of the right hip would cause the same tightness or discomfort in the right gluteus "ASND PROX" thigh. Hakala further noted that plaintiff had full lumbar flexion to 100 degrees and could touch his toes. He could extend to 30 degrees and laterally bend jot 30 degrees left and right. He had no sensory motor loss. He could stand on either leg without a problem and heel and toe stand as well. Plaintiff's hips were level and legs appeared to be of equal length. The callous on plaintiff's right superior pubic ramus was the same. Plaintiff

was instructed in lumbar crunches which he said he would do.  He already did lateral stretches and extension type exercises at that time and stated that he would continue.  Hakala ordered an x-ray of plaintiff's right hip and pelvis.  Hakala also requested a CBC, BMP and H.Pylori Antibody.  Hakala noted that if the test was not normal, then plaintiff was likely to need a stay in TCU to evaluate Hematemsis.  Hakala stated that plaintiff should be seen in one month and ordered "low bunk" for plaintiff for one month.

An x-ray was performed on plaintiff's pelvis and right hip on August 4, 2004.  Dr. Luetkemeyer analyzed these:  Two views of the right hip were obtained.  The femoral head was normal in its cortical margin.  Articular margin also appeared to be smooth.  No discrete fracture was identified.  Ossified density was again noted near the inferior pubic ramus.  This had the appearance of exuberant callous formation.  The impression was "1.  negative for evidence of acute bony injury involving the right hip.  2.  Ossification adjacent to the right inferior pubic ramus if [plaintiff] does not have a history ok fracture in this area, then tumoral ossification should be considered and a ct of the pelvis is advised."  A single view of the pelvis was obtained and compared with the examination of 6/30/04.  There was no significant change in the appearance of the pelvis.  Soft tissue ossification in the region of the right inferior pubic ramus was again noted.  The cortical margins were

otherwise smooth.  The impression was "similar appearance of the soft tissue ossification/calcification in the right side of the pelvis near the ischium and inferior pubic ramus.  If [plaintiff] does not have a history of fracture, then a tumor should be considered, with ossified soft tissue material.  Consider a CT of the pelvis for further evaluation, in the absence of a history of trauma.

Plaintiff was seen by Hakala on September 7, 2004.  The notes indicate that plaintiff stated that his right him was "not right and in constant pain."  He also stated that it has caused something else to be wrong inside of him so that he gets dehydrated and spits up stomach acid when he's constipated.  Plaintiff stated that he could not play basketball or run anymore.  Hakala observed that plaintiff had a minor decrease in the swing of his right leg in his gait walking.  He had limited abduction of his right him to 45 degrees vs. 60 degrees on left.  SLR testing on both hips was the same, but plaintiff felt pain on the right.  Hakala noted that plaintiff had a hypertrophic callous on his right pubic ramus.  The x-rays taken have shown hypertrophic callous formation there.  Plaintiff's heart was regular, his lungs were clear and his abdomen was soft and non-tender.  Hakala ordered a CBC with "diff", CMP and requested plaintiff's x-rays so that he could review them.  He requested a referral to an orthopedic surgeon.

The requested referral to an orthopedic surgeon was denied.  Dr. Baker

determined that he did not think there was anything that orthopedic surgery could do for plaintiff. The two pelvic x-rays suggest old healed fracture with exuberant callus formation.

Hakala saw plaintiff again on March 11, 2005. Plaintiff again complained of right leg pain at the proximal thigh at the lump that is there. Hakala's impressions, noted in the medical record, were as follows: "to my observation his calves are of equal size and muscle mass is equal and normal. Seated active SLR is done to 90 degrees left and right. Supine SLR active is 45 degrees L and 30 degrees R. Abduction of L is 45 degrees and R is 30 degrees. He has strong ankles quad, biceps femoris, adductors and abductors. He has a lump in R low groin to the R of the Rubis. His legs are of equal length. His reflexes are 2/4 at the Patellae and 1/4 at the Achilles Blat. He has normal sensation to touch in both feet and legs. His abdomen is soft and non tender and no mass is palpated above the pubis. There is no pain in the Trochanter with ROM of R hip or palpation of trochanter." Hakala's plan was to x-ray the pelvis and right femur. He ordered Ibuprofen with food and after reviewing the x-rays, he would consider an orthopedic consult.

On March 15, 2005, an x-ray was performed. The test results were as follows: "The bony structures are intact. Bony mineralization is normal. No soft tissue abnormalities are evident." The impression by D. Hawes-Davis, DO was that

it was a "Normal Radiographic Study." The findings are noted in plaintiff's medical record: "There is evidence to suggest healed fracture deformity involving the mid inferior right pubic ring with associated heterotrophic calcifications adjacent to the healed fracture. Remaining bony structures and articular spaces are intact."

Plaintiff filed an Informal Resolution Request on August 4, 2004. He stated that he had been denied proper medical care for his right hip injury and spitting up of stomach acid. Plaintiff stated that he needed "to be sent to a real doctor, to find out what's really wrong with [him], Meaning a [sic] Orthopedic Doctor and a Stomach Specialist. . ." A response to this informal grievance was given on August 10, 2004, by Debbie Hardin, R.N., Director of Nursing. The response noted that plaintiff had been seen by the nursing staff and doctors with treatment documented. Plaintiff was advised that he would be rescheduled for follow up with Dr. Hakala.

Plaintiff filed an Offender Grievance on August 20, 2004. In this grievance, plaintiff stated that he had not received proper medical attention. Plaintiff stated in his grievance that he needed to be seen by an orthopedic doctor and stomach specialist. Defendant Stanley, Health Services Administrator, responded to the grievance on September 16, 2004. Stanley's response was that plaintiff had been seen by Hakala on four separate occasions and was currently being treated by Hakala.

Plaintiff filed an Offender Grievance Appeal on September 24, 2004. He stated that he was "in search of being seen by a [sic] Orthopedic that's license [sic] to deal with broken bones and [he] also file [sic] this appeal to have [his] right leg properly treated and fixed." This appeal was reviewed by the Health Services Administrator on November 10, 2004. The Health Services Administrator found that protocols were followed and that a referral to an orthopedic surgeon was not warranted. The Administrator also found that licensed medical staff has continued to follow and treat plaintiff. This appeal was also reviewed by the Regional Medical Director.

## Summary Judgment Standard

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir.

1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The Court will review the facts in this case with the stated standards in mind.

## Discussion

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Wison v. Seiter*, 501 U.S. 294, 298 (1991)." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). To prevail on a deliberate indifference claim against defendant, plaintiff must show he suffered from a serious medical need and defendants knew of, yet disregarded, the need. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000); *Roberson v. Bradshaw,* 198 F.3d 645, 647 (8th Cir.1999).

CMS, Hakala and Stanley contend they are entitled to summary judgment on the claims against them. CMS moves for summary judgment on the basis that plaintiff's claims against it are based on a theory of *respondeat superior*, which is not cognizable under 42 U.S.C. § 1983.

## Defendant Hakala

Plaintiff has failed to create any genuine issues of material fact regarding his Eighth Amendment claims against defendant Hakala. While plaintiff's claims may satisfy the objective aspect of the two prong test showing that he has serious medical needs, see *Roberson*, 198 F.3d at 648 (need or deprivation alleged must be either obvious to layperson or supported by medical evidence, like physician's diagnosis), plaintiff cannot prove that Hakala knew of the serious medical needs and deliberately disregarded them. The subjective element of an Eighth Amendment

claim requires that an official act with deliberate indifference to inmate health or safety. *Farmer v. Brennan,* 511 U.S. 825, 835-36 (1994). "Deliberate indifference" entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*, at 837. See also, *Bender v. Regier,* 385 F.3d 1133, 1137 (8th Cir. 2004).

The record before the Court shows that Hakala treated plaintiff on a number of occasions. He reviewed plaintiff's medical records, conducted physical examinations, evaluated plaintiff's complaints and concerns and ordered x-rays and tests when warranted. This course of treatment was consistent with plaintiff's medical needs.

Plaintiff seeks specific types of treatment and claims that the failure to provide this specific treatment rises to the level of a constitutional violation. Plaintiff 's disagreement with his treatment is, however, misplaced. *See Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir.1997) (prison doctors remain free to exercise their independent medical judgment).

Defendant has presented the declaration of Dr. Elizabeth Conley, a licensed physician, who testifies that Hakala's treatment of plaintiff falls well within the

standard of care in the community. Plaintiff has not controverted this evidence with any admissible evidence, rather, he continues to argue that his medical treatment is not sufficient and that he needs to be seen by specialists. This, however, is insufficient to overcome the evidence in the record. "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Dulany*, 132 F.3d at 1234.

### Defendant Stanley

Plaintiff contends that defendant Stanley was deliberately indifferent because after reviewing the grievance, she failed to take action. However, the record is clear that plaintiff's medical needs were addressed and evaluated. Defendant Stanley is not a physician, and in her administrative role, she reviewed plaintiff's records and found that plaintiff's medical needs were under the care of a physician. As a non-physician, defendant Stanley has no authority to override plaintiff's physician's medical treatment. Plaintiff has presented nothing, other than argument with Stanley's determination, that defendant Stanley was deliberately indifferent to plaintiff's medical condition. Quite the contrary, Stanley, as an administrator, performed the duties required: she reviewed plaintiff's grievance and his medical

records and determined that plaintiff was receiving medical care.

**Defendant CMS**

CMS moves for summary judgment based on the ground of *respondeat superior*. Plaintiff does not identify any CMS policies which violated his constitutional rights, and therefore, any claim based on *respondeat superior* is not recognized under Eighth Circuit precedent. The Court agrees. In *Sanders v. Sears, Roebuck & Co.,* 984 F.2d 972 (8th Cir.1993), the Eighth Circuit rejected a claim that a private corporation was liable under the doctrine of *respondeat superior* for the actions of its security guard. Specifically, the Eighth Circuit held that: a corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983. *Sanders,* 984 F.2d 972, 975-76 (1993) (citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 690 (1978)) (internal citations omitted). Similarly, Plaintiff's § 1983 claim fails. Plaintiff has not alleged nor proven any "policy or customs" of CMS official policy, custom, or action which he derives his claims of liability under § 1983. Plaintiff merely alleges that CMS is liable under a theory of vicarious liability. Plaintiff specifically complains of specific actions taken by the individual defendants and has failed to establish any policy promulgated by CMS

which injured him in any way.

It is well established that liability under 42 U.S.C. § 1983 cannot be grounded upon a *respondeat superior* theory of recovery. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Choate v. Lockhart,* 7 F.3d 1370, 1376 (8th Cir.1993); *Oldham v. Chandler-Halford,* 877 F.Supp. 1340, 1356 (N.D.Iowa 1995). The Eighth Circuit has discussed the ways in which a supervisor *can* incur liability under § 1983 as follows: A supervisor is liable "for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir.1995) (footnote omitted). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye [to it]." *Id.* (internal quotation marks omitted). Likewise, other courts have stated supervisory officials are liable under § 1983 only if they fail promptly to provide an inmate with needed medical care, they deliberately interfere with the prison doctors' performance, or they tacitly authorize or are indifferent to the prison doctors' constitutional violations. *E.g., Miltier v. Beorn,* 896 F.2d 848, 854 (4th Cir.1990). *Meloy v. Bachmeier,* 302 F.3d 845, 849 (8th Cir.2002). Even setting aside the fact that the Court has found that the individual defendants Hakala and Stanley did not violate plaintiff's constitutional rights, no liability for Hakala

and Stanley's actions can attach to CMS, *see Jolly,* 205 F.3d at 1098, because there is no inkling in the record that CMS was deliberately indifferent to plaintiff's medical needs. The record is devoid of any evidence that plaintiff suffered an injury as a result of an unconstitutional custom, practice or policy employed by CMS. Summary judgment in favor of CMS is therefore appropriate on a number of grounds.

## Conclusion

Based upon the foregoing, plaintiff has failed to present any genuine issues as to any material fact to establish that defendants Hakala, Stanley and CMS have violated his constitutional rights in violation of Section 1983. They are, therefore, are entitled to judgement as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that defendants CMS, Hakala and Stanley's Motion for Summary Judgment, (#13), is granted.

**IT IS FURTHER ORDERED** that judgment in their favor shall be entered when all remaining issues herein have been resolved.

Dated this 2nd day of August, 2005.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE